UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

LORIE G.,

                            Plaintiff,

v.                                                      6:17-CV-0509
                                                       (TWD)
COMM'R OF SOC. SEC.,

                            Defendant.

———————————————————————

APPEARANCES:                                OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ              PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.                GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Lorie G. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 10 and 13.)  For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1965, making her 46 years old at the alleged onset date and 49 years old at the ALJ's decision.  She reported completing the twelfth grade and her previous work was as a customer service clerk and loan processor.  At the initial application level, Plaintiff alleged disability due to left and right rotator cuff impairments, severe arthritis, diabetes, depression, a burning sensation in her feet, and a tingling sensation in her hands.

### B.    Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits and Supplemental Security Income on July 2, 2014, alleging disability beginning on March 9, 2012.  Her applications were initially denied on July 23, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Joseph L. Brinkley on July 28, 2015.  (T. 33-76.) [1]  On September 14, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 5-26.)  On March 9, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)

### C.    The ALJ's Decision

The ALJ made the following seven findings of fact and conclusions of law.  (T. 10-20.)  First, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018.  (T. 10.)  Second, the ALJ found Plaintiff has not engaged in

---

[1]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

substantial gainful activity since March 9, 2012, the alleged onset date.  (T. 11-12.)  Third, the

ALJ found Plaintiff's neuropathy, left shoulder replacement, left shoulder arthritis, cervical

arthritis, diabetic retinopathy, leukocystosis, diabetes mellitus, and depression are severe

impairments.  (T. 11.)  Fourth, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 11-13.)  The ALJ considered Listings 1.02

(major dysfunction of a joint), 1.04 (disorders of the spine), 2.02 (loss of central visual acuity),

2.03 (contraction of the visual fields in the better eye), 2.04 (loss of visual efficiency), 7.00

(hematological disorders), 9.00 (endocrine disorders), 11.14 (peripheral neuropathies), and 12.04

(affective disorders).  (*Id*.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity

("RFC") to perform light work except

she is

> limited to frequent fingering, feeling, grasping, and handling with
> the upper extremities bilaterally; occasional repetitive operation of
> foot and leg controls with the lower extremities bilaterally;
> occasional lifting, reaching, pulling, and pushing overhead with the
> upper extremities bilaterally; occasional climbing ramps and stairs,
> balancing, kneeling, and stooping; and no crawling, crouching, or
> climbing ladders, ropes, or scaffolds.  The claimant would need to
> avoid jobs requiring depth perception bilaterally; and avoid
> concentrated exposure to wetness, vibrations, extreme hot or cold
> temperatures, humidity, and workplace hazards, including
> unprotected heights, dangerous machineries, and uneven terrains.
> The claimant is limited to unskilled jobs such that she could apply
> commonsense understanding to carry out detailed, but uninvolved
> oral or written instructions, and perform work that does not require
> [a] fixed number of high volume production quotas and fast-paced
> assembly line work.  The claimant could stand and/or walk for one
> hour at a time, but would need the option of sitting up to five minutes
> while remaining on task before returning to the sitting or standing
> position; can stand and walk for a combined total of six hours in an
> eight-hour workday with interruptions and regularly scheduled
> breaks; and can sit for a total of six hours in an eight-hour workday
> with interruptions and regularly scheduled breaks.

(T. 13-14.)  Sixth, the ALJ found Plaintiff is unable to perform any past relevant work.  (T. 18.)
Lastly, the ALJ found there are jobs existing in significant numbers in the national economy
Plaintiff can perform and concluded Plaintiff is not disabled.  (T. at 19-20.)

### D.    The Parties' Briefings on Their Cross-Motions

### 1.    Plaintiff's Motion for Judgment on the Pleadings

Plaintiff makes three arguments in support of her motion for judgment on the pleadings.
(Dkt. No. 10 at 6-18.)[2]  First, Plaintiff argues the ALJ erred in finding she can perform light
work.  (*Id*. at 6-9.)  She contends the RFC does not consider all the non-exertional mental
limitations found by consultative examiner Jacqueline Santoro, Ph.D., and her mental health
treating sources, and the ALJ failed to explain why he discounted the limitations opined by these
sources.  (*Id*. at 6.)  Plaintiff also argues the ALJ's physical RFC determination is inconsistent
with the findings of a state agency consultant, consultative examiner Tanya Perkins-Mwantuali,
M.D., and treating nurse practitioner ("NP") Marla Smith, FNP.  (*Id*. at 6-8.)  Plaintiff asserts the
ALJ violated Social Security Ruling ("SSR") 96-6p in not providing specific reasons for
rejecting the contrary opinion of the non-examining state agency medical consultants and
contends the ALJ never mentioned the opinions of the state agency consultant or the single
decision maker ("SDM")[3] regarding physical limitations when discussing the evidence
supporting his RFC for light work.  (*Id*. at 8-9.)

---

[2]     Page references in citations to the parties' briefs refer to the page numbers inserted by the
Court's electronic filing system maintained by the Clerk's Office.
[3]     It is unclear whether Plaintiff argues that the single decision maker was a medical
consultant or if she is referring to two separate assessments as part of the initial determination.
(Dkt. No. 10 at 8.)  The Court notes that the initial determination in July 2014 included a
psychiatric assessment by consultant G. Kleinerman, M.D., and an RFC assessment by single
decision maker T. Simpson.  (T. 173-200.)

Next, Plaintiff argues the ALJ erred in failing to give appropriate weight to the opinion of treatment provider NP Smith and in failing to properly analyze the medical evidence. (*Id*. at 9-11.) Plaintiff contends the ALJ erroneously discredited NP Smith's opinions, in part due to the assertion that a nurse practitioner is not an acceptable medical source, and notes that the category of acceptable medical sources changed in March 2017 to include "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title." (*Id*. at 10; citing 20 C.F.R. § 404.1502(a)(7).) Plaintiff further notes the ALJ's other reason for giving little or no weight to NP Smith's opinions that physical examinations generally indicated benign findings is incorrect and there are adequate findings in the evidence to support NP's Smith's opinions. (*Id*. at 10-11.)

Third, Plaintiff argues the ALJ violated her due process rights and violated regulations when employing consultative medical examiners. (*Id*. at 12-18.) Plaintiff asserts the ALJ did not follow the Agency's regulations when requesting consultative examinations from outside sources rather than contacting a treating source for the consultative opinion. (*Id*. at 12.) Plaintiff contends the ALJ erred in retaining the services of a non-treating physician with no specialty in the conditions allegedly rendering Plaintiff disabled, rather than using Plaintiff's treating source to do the examination. (*Id*. at 12-13; citing 20 C.F.R. § 404.1519h.) The ALJ retained Dr. Perkins-Mwantuali through Industrial Medical Associates, a practice that performs voluminous cursory evaluations without specialization and without access to the complete record, resulting in a physical examination that found little in the way of functional limitations. (*Id*. at 13-14.) Plaintiff contends there is no evidence in the record that (1) the Agency attempted to contact any of her treating sources to perform any examination, (2) the treating sources ever indicated a

preference not to perform the examination, or (3) the treating sources did not have the requisite equipment to do so.  (*Id*. at 13-14; citing 20 C.F.R. § 404.1519i.)

Plaintiff asserts she was never provided any notice of her right to object to the use of non-treating physicians for the consultative examination, nor was she provided with any notice of her right to object to the specific sources used by the Agency for these examinations.  (*Id*. at 14-15.) She contends this violated her rights under the Fourteenth Amendment of the United States Constitution in that Defendant's failure to provide any notice of this right was tantamount to a deprivation of her property interest in the disability insurance benefits for which she paid through her mandated Social Security contributions.  (*Id*. at 15.)  Plaintiff notes the consultative examinations occurred on July 9, 2014, and July 15, 2014, respectively, and she did not retain representation until August 13, 2014.  (*Id*.; T. 203, 607, 623.)  She argues the failures to advise her of her opportunity to object to the chosen consultative medical examiner and of her right to request the examination be performed by her treating source resulted in "cooking the books" for the subsequent administrative hearing.  (*Id.* at 16-18.)  This is because the evidentiary record upon which the ALJ decided the case had been slanted away from objectivity and fairness and the evidence upon which the ALJ relied was gathered in direct contravention of the regulations, which state a clear preference for treating source consultative examinations.  (*Id*.)

### 2.     Defendant's Motion for Judgment on the Pleadings

Defendant makes three arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 13 at 6-13.)  First, Defendant argues the ALJ properly evaluated Plaintiff's ability to stand and walk.  (*Id*. at 6-9.)  Defendant asserts the ALJ applied the correct legal standards in evaluating the medical opinion evidence of record and the decision included a thorough and in-depth analysis of Plaintiff's limitations regarding standing, walking, sitting and

other use of her lower extremities.  (*Id*. at 6-7, 9.)  Defendant contends the restrictions found by

the ALJ properly reflected Plaintiff's limitations as indicated in the medical record and were

supported by treatment notes, examination findings, and medical opinion statements.  (*Id*. at 7.)

Further, consultative examiner Dr. Perkins-Mwantuali's report was consistent with the ALJ's

conclusion.  (*Id*. at 7-8.)  Regarding NP Smith's opinion, Defendant notes opinions from nurses

are not considered medical opinions under the regulations because they are not from acceptable

medical sources.  (*Id*. at 8.)  The ALJ properly noted NP Smith was not an acceptable medical

source, her opinion was not supported by the medical record as a whole, and her report was

contradicted by substantial medical evidence and Dr. Perkins-Mwantuali's opinion.  (*Id*.)

Regarding the opinion of SDM T. Simpson as cited by Plaintiff, Defendant notes Simpson was

not a doctor or an acceptable medical source.  (*Id*. at 8-9.)

Second, Defendant argues the ALJ properly evaluated NP Smith's opinion, providing

substantive reasons for discrediting her opinion and properly assigning it little weight.  (*Id*. at 9-

11.)  Defendant reiterates the ALJ properly noted NP Smith was not an acceptable medical

source and, in any event, her opinion was not supported by the medical record as a whole.  (*Id*. at

9.)  The statute cited by Plaintiff is inapplicable to the case at hand because it pertains to claims

filed on or after March 27, 2017, and Plaintiff's claims were filed in 2014.  (*Id*.)  Defendant notes

NP Smith's opinion contains limitations relating to matters far afield from her diagnosis of

diabetes, including opinions on mental impairments and environmental restrictions.  (*Id*. at 9-10.)

Defendant also contends NP Smith would not qualify for controlling weight under the treating

physician rule even if considered an acceptable medical source because her opinion is not well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the case record.  (*Id*. at 10.)

Third, Defendant argues the ALJ properly ordered an outside consultative medical examination to resolve inconsistencies in the medical evidence.  (*Id*. at 11-13.)  Defendant asserts returning to the treatment providers already in evidence would have been insufficient to make a determination.  (*Id*. at 11.)  The ALJ's decision to order a consultative examination is usually considered discretionary and the ALJ is not compelled by the relevant statute to ask one of Plaintiff's treating providers to perform the consultative examination.  (*Id*. at 11-12.)  Defendant contends 20 C.F.R. § 404.1519i sets forth a non-exhaustive list of reasons why an ALJ may consult a non-treating source to perform a consultative examination and the enumerated reasons explicitly include resolving inconsistencies in the medical record.  (*Id*. at 12.)  Here, the ALJ specifically noted the minimal and relatively benign examination findings from Plaintiff's treating sources did not justify their restrictive assessments of her functioning and, accordingly, the ALJ properly turned to an outside medical examiner to get a new perspective on Plaintiff's functioning.  (*Id*. at 12-13.)  Defendant notes, when contacting Plaintiff's treating providers, the Agency specifically asked them if they would be willing to perform a consultative examination and none of the doctors responded affirmatively.  (*Id*. at 13.)  Finally, Plaintiff did not object to the selection of her consultative examiner at the time, even though she was afforded the opportunity to do so, and she should not be allowed to retroactively nullify the ALJ's decision and restart the administrative process by raising the objection now.  (*Id*.)

## II.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

8

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.    ANALYSIS

A.    **Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which

could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### i.    The Medical Opinions of Record

On July 9, 2014, consultative examiner Dr. Perkins-Mwantuali observed Plaintiff appeared to be in some distress and was sweating heavily.  (T. 609.)  Her gait was abnormal and appeared antalgic; she complained of bilateral foot pain and stated she had pain from neuropathy.  (*Id*.)  She was walking in her socks only and when asked to put on her shoes and attempt to walk again, some of the pain in the feet was relieved and she was able to have a more normal gait, she could walk on her heels and toes, her squat was minimal, and her stance was normal.  (*Id*.)

On examination, she had limited range of motion in the cervical and lumbosacral spine with straight leg raise testing between 5 to 10 degrees bilaterally and negative sitting straight leg raise testing bilaterally.  (T. 610.)  She had no movement of the left shoulder and stated she could not raise the arm anteriorly.  (*Id*.)  Her elbow range of motion was somewhat limited and she had full range of motion in the wrists, hips, knees, and ankles.  (*Id*.)  Her hand and finger dexterity were intact and she had full grip strength bilaterally.  (*Id*.)

Dr. Perkins-Mwantuali diagnosed continued elevated white blood cell count, diabetes, bilateral rotator cuff injuries with loss of function of the left shoulder, inability to make any significant movement of the shoulder, using the right arm to lift the left arm, significant pain with any movement of the left shoulder, arthritis in the cervical spine, depression, and findings consistent with diabetic neuropathy.  (T. 611.)  She opined Plaintiff had marked limitation with lifting, pushing, pulling, reaching, and carrying with the left arm and mild-to-moderate limitations with walking and standing.  (*Id*.)  The ALJ afforded little weight to Dr. Perkins-Mwantuali's opinion on the grounds that it was vague because "marked" did not clearly articulate a functional limitation and it was not consistent with the longitudinal, evidentiary record as a whole.  (T. 17.)

On July 15, 2014, consultative examiner Dr. Santoro observed Plaintiff's demeanor and responsiveness to questions was cooperative and her manner of relating was adequate.  (T. 624.) She had a coherent and goal-directed thought process, depressed affect, tired and dysthymic mood, fair insight and judgment, intact attention and concentration, and mildly impaired recent and remote memory skills due to emotional distress related to depression and pain.  (T. 625.)  Dr. Santoro diagnosed persistent depressive disorder, panic disorder, and a history of cocaine/substance use disorder.  (T. 626.)  She opined no limitation in following and understanding simple directions and instructions, performing simple tasks, and maintaining attention and concentration; mild limitations in learning new tasks and performing complex tasks; and moderate limitations in maintaining a regular schedule, making appropriate decisions, relating with others, and dealing with stress.  (T. 626.)  She noted these difficulties were caused by psychiatric symptoms and the results of the present evaluation appeared to be consistent with psychiatric problems that might significantly interfere with Plaintiff's ability to function on a daily basis.  (*Id.*)  The ALJ indicated the medical record somewhat supported Dr. Santoro's opinion, noting there was support for moderate limitations in concentration, persistence or pace, but that Plaintiff had mild limitation in social functioning.  (T. 16.)  The ALJ noted there was no evidence showing Plaintiff's depression seriously affected her ability to interact with others and therefore afforded only some weight to Dr. Santoro's opinion.  (*Id.*)

On July 22, 2014, as part of the initial disability determination, non-examining state agency consultant G. Kleinerman, M.D., opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  (T. 178, 182-84, 192, 197-98, 628-30.)  Dr. Kleinerman also opined Plaintiff was capable of

14

performing basic work functions, with limited contact with coworkers and the public.  (T. 179, 193, 628-30.)  The ALJ stated that, while there was no support for moderate limitations in social functioning, Dr. Kleinerman ultimately found Plaintiff not disabled, a determination supported by the medical record as a whole, and therefore afforded some weight to his opinion.  (T. 16.)

In January 2015, independent consultant Richard B. Evans, M.D., indicated he had reviewed Plaintiff's 465-page file and noted he had spoken with Plaintiff's treatment providers NP Smith and Kevin Setter, M.D., on December 30, 2014.  (T. 631-44.)  Dr. Evans indicated Dr. Setter was of the opinion Plaintiff could work with restrictions which included a hands-free headset, no overhead work, no lifting from waist to shoulder level, and lifting limited to 10 pounds from floor to waist level.  (T. at 641-42.)  Dr. Evans opined she had advanced degenerative arthritis in the shoulders, and would be unable to work for four weeks postoperatively following her shoulder surgery in August 2014.  (*Id.*)  The ALJ indicated the medical record as a whole supported Dr. Evans' opinion and afforded it great weight, noting that, while it was true Plaintiff had several severe impairments, these impairments were not disabling in nature, and that Dr. Evans' opinion was consistent with the totality of the evidentiary record. (T. 16.)

On July 16, 2014, NP Smith indicated Plaintiff's employment disability benefits must be extended because she required bilateral shoulder replacements that had been delayed for two years by the orthopedist, she was an out of control diabetic and not healthy enough to work, her blood sugars, cholesterol and triglycerides were dangerously high, she was in chronic pain, and she had severe degenerative joint disease, uncontrolled hypertension, hypothyroidism, and depression.  (T. 595.)

15

The record also appears to include two RFC questionnaires from NP Smith.  (T. 841-52.)
Both are addressed to Steven Sperling, M.D, but appear to have been completed by NP Smith,
with the second opinion appearing to have slight changes made to some of the opined limitations.
(*Id*.)  On May 22, 2015, NP Smith indicated she had seen Plaintiff every six weeks to three
months for the previous three years.  (T. 841, 847.)  She noted diagnoses including multiple tears
in the bilateral shoulders, left shoulder replacement, uncontrolled diabetes, diabetic retinopathy,
and hypertension.  (*Id*.)

NP Smith opined Plaintiff's symptoms were frequently severe enough to interfere with
attention and concentration and indicated Plaintiff was capable of low stress jobs once her
orthopedic conditions were addressed, noting Plaintiff was undergoing left rotator cuff repair and
shoulder replacement.  (T. 842, 848.)  She opined Plaintiff could not walk any city blocks as she
had just had foot surgery.  (*Id*.)  In the first opinion, NP Smith also opined Plaintiff could sit
more than two hours at a time for at least six hours total, stand 30 minutes at a time, and
stand/walk for less than two hours total; Plaintiff would need a job permitting shifting positions
at will, would need to take unscheduled breaks, and would need to elevate her legs with
prolonged sitting for 1-2 hours.  (T. 843-44, 849-50.)  In the second opinion, NP Smith
apparently opined Plaintiff could sit for two hours at a time for less than two hours total, stand
for 15 minutes at a time, and stand/walk for less than two hours total.  (T. 849.)  NP Smith
opined Plaintiff could do no lifting until her shoulders healed and could never climb ladders, but
could frequently twist, and occasionally stoop, crouch and climb stairs.  (T. 844, 850.)  In the
second opinion, she indicated Plaintiff could only rarely twist, stoop, crouch, and climb stairs.
(T. 850.)  She indicated Plaintiff was severely limited in reaching with her arms, but had no

environmental restrictions.  (T. 845, 851.)  NP Smith opined Plaintiff was likely to miss more than four days per month.  (T. 846, 852.)

On July 17, 2015, NP Smith indicated in a progress note that, with Plaintiff's chronic pain in her shoulders and feet, sedating medication, out of control blood sugars, and severe depression, she was not able to work.  (T. 853-56.)

The ALJ noted NP Smith's multiple opinions and indicated she was not an acceptable medical source.  (T. 16.)  The ALJ also found NP Smith's opinion was not supported by the medical record as a whole and her physical examinations generally indicated benign findings including normal neurological examination.  (*Id*.)  Therefore, NP Smith's opinion restricting Plaintiff to only two hours of standing/walking was not supported and there was also no evidence that Plaintiff was completely incapable of lifting.  (*Id*.)  The ALJ noted that, although some restricted range of motion in the shoulders was noted on examinations, this did not support a finding that Plaintiff was unable to lift and carry and that NP Smith's opinion was further rebutted by full grip strength and intact hand/finger dexterity noted during the consultative examination.  (T. 16-17.)  The ALJ therefore afforded little weight to NP Smith's opinion because it was not supported by the medical record as a whole.  (T. 17.)

On July 13, 2015, treating provider Maria Haran, LCSW, noted she had treated Plaintiff between March and July 2015 for a total of seven appointments.  (T. 840.)  She diagnosed major depressive disorder, anxiety due to pain with generalized anxiety, and insomnia as related to medical issues.  (*Id*.)  She opined depression, fatigue, and concentration deficits were present and incapacitating, causing Plaintiff to be off-task for at least 50 percent of the time in an 8-hour block of time.  (T. 840.)  She also opined no-to-mild limitations in following rules, relating to acquaintances and familiar people, and relating to authority figures; moderate limitations in

using judgment; and marked limitations in dealing with the public, dealing with stress, functioning independently, maintaining attention/concentration, maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability.  (T. 839.)  Ms. Haran indicated Plaintiff was likely to miss more than four days per month and was dependent on painkillers for her physical problems.  (T. 840.) The ALJ noted there was no evidence to support this opinion and it appeared Plaintiff's depression was largely situational and not chronic in nature.  (T. 17.)  The ALJ afforded little weight to Ms. Haran's opinion, noting Plaintiff started consulting a therapist only in May 2014, over year two years after the alleged onset date, which suggested her depression was not particularly severe.  (*Id*.)

## ii.    The Court's Analysis

Plaintiff argues the RFC for a modified range of light work is not supported by substantial evidence because it does not consider all of her non-exertional mental limitations and is inconsistent with the findings of a state agency consultant, consultative examiner Dr. Perkins-Mwantuali, and treatment provider NP Smith.  (Dkt. No. 10 at 6-8.)  Plaintiff also asserts the ALJ erred in failing to mention the opinions of the state agency consultant or the single decision maker at the initial determination, give appropriate weight to NP Smith's opinion, and properly analyze the medical evidence.  (*Id*. at 8-11.)  The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ's overall decision indicates a thorough analysis of the evidence of record including the medical evidence and opinions as well as Plaintiff's testimony and reports.  (T. 14-18.)  For example, the ALJ specifically noted Plaintiff's physical impairments in relation to the medical evidence, including her report of a significant history of diabetic neuropathy while

neurological testing generally indicated benign findings.  (T. 15.)  The ALJ also specifically

noted Plaintiff's history of depression and generally benign findings on mental status

examinations.  (T. 15-16, 734-40, 776-81.)  The psychological consultative examination with Dr.

Santoro showed generally benign findings except for depressed affect, dysthymic mood, and

only mildly impaired recent and remote memory skills due to emotional distress related to

depression and pain.  (T. 16, 622-27.)

Second, the ALJ's analysis of the medical opinions of record is supported by substantial

evidence.  The ALJ considered the opinion evidence in accordance with the requirements of 20

C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  (T. 16.)  His analysis

includes an adequate summary of the opinion evidence and sufficient specific reasons for the

weight afforded to each opinion.  (T. 16-17.)

Third, substantial evidence supports the ALJ's analysis of NP Smith's multiple opinions.

The ALJ properly considered these opinions and the support in the record for the limitations

opined.  The ALJ also correctly noted that nurses are not acceptable medical sources under the

regulations which were in effect at the time of the ALJ's decision.  As Defendant points out, any

changes to the definition of an "acceptable medical source" created by 20 C.F.R. § 404.1502 are

effective only with respect to claims filed on or after March 27, 2017.  (Dkt. No. 13 at 9.)

It was within the ALJ's purview to consider the opinions along with the other medical

opinions of record and resolve any conflicts therein, as the ALJ has the responsibility of

reviewing all the evidence before him, resolving inconsistencies, and making a determination

consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL

457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical

evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v.*

*Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) (same).  The ALJ appropriately considered the other medical opinions of record, affording great weight to Dr. Evan's opinion and little weight to Dr. Perkins-Mwantuali's opinion.  (T. 16-17.)  Additionally, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations."  *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013).

Further, this Court will not reweigh the evidence before the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (*Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016)) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  The Court does note however that, as summarized above, NP Smith's opinions appear not only overly restrictive given the medical evidence of record, but also internally inconsistent, which further supports the ALJ's findings.  (T. 595, 841-56.)

Finally, while Plaintiff takes issue with the ALJ's failure to mention the opinion of a single decision maker regarding Plaintiff's physical limitations, it was not error warranting remand.  (Dkt. No. 10, at 8-9.)  As the Court has noted previously, "ALJs have been instructed by the Social Security Administration that the opinions of [Single Decision Maker]s 'should not

be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a [Single Decision Maker]'s opinion is an error." *Robles v. Comm'r of Soc. Sec.*, 15-CV-1359 (GTS), 2016 WL 7048709, at *6 (N.D.N.Y., Dec. 5, 2016) (quoting *Martin v. Astrue*, 10-CV-1113 (TJM), 2012 WL 4107818, at *15 (N.D.N.Y., Sept. 19, 2012)); *see also Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014) ("Because 'a single decision maker [] is not a medical professional[,] [] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.'") (quoting *Sears v. Astrue*, 11-CV-0138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012)).

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence.  Remand is therefore not required on this basis.

## B.    Substantial Evidence Supports the ALJ's Decision to Use an Outside Medical Source for the Consultative Examination

"A claim of entitlement to social security benefits triggers Due Process Clause protections." *Pokluda v. Colvin*, 13-CV-0335 (GLS/ESH), 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976)).  Generally, due process requires only that the proceedings in the context of an administrative social security hearing be "full and fair."  *Id*. (citing *Richardson*, 402 U.S. at 401-02; *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).

Plaintiff argues the ALJ violated her due process rights and violated regulations when requesting consultative examinations from outside sources rather than contacting one of her treating sources for the consultative opinion, and by failing to give her adequate notice of her right to object.  (Dkt. No. 10, at 12-18.)  The Court disagrees for the following reasons.

First, the regulations cited by Plaintiff indicate a discretionary preference for a claimant's treating source to perform additional examinations or testing, but not a binding requirement on the ALJ to seek the exam from the treating source. 20 C.F.R. §§ 404.1519h, 404.1519i. Further, contrary to Plaintiff's contention regarding the Agency's use of Dr. Perkins-Mwantuali (who did not have access to the full case record), there is also no legal requirement that opinion sources have access to the complete record. *Stottlar v. Colvin*, 15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon'"); *see also* 20 C.F.R. § 404.1519n(c) (which does not indicate that reviewing a claimant's medical records is a requirement for a complete consultative examination).

Second, as Defendant points out, the Social Security Administration contacted Plaintiff's treating providers in developing the case record and asked them if they would be willing to perform a consultative examination, with none of her doctors responding affirmatively. (Dkt. No. 13 at 13; T. 536, 597.) Further, on January 21, 2014, Dr. Sperling who worked in the same group with NP Smith refused to fill out Plaintiff's disability papers because he did not know her and had not been involved with her case. (T. 689.) Dr. Sperling wrote: "[t]his is a woman who never took care of herself at all. Now she wants disability. I think that this is insane. As far as I am concerned, the papers can be filled out by our nurse practitioner, Marla, and I could take a look at them and if I agree with them, I may cosign or I may change them slightly." (T. 689.) The Court again notes that the May 2015 opinions from NP Smith appear to be addressed to Dr. Sperling, but filled out by NP Smith. (T. 841-52.) Neither version of the opinion includes a signature or changes made by Dr. Sperling. (*Id.*) Thus, Plaintiff has failed to establish that any

of her treating providers who would actually be an acceptable medical source to opine on such limitations would have even agreed to complete a consultative examination if requested.

Third, Plaintiff was represented by her current counsel at the administrative hearing in July 2015 and indicates she retained his representation as early as August 2014.  (T. 33-76, 203.) It does not appear that either Plaintiff or her counsel indicated any objection to the consultative examiners at any time between August 2014 and the hearing in July 2015.  Neither Plaintiff nor her counsel objected at the hearing to the admission of the consultative examinations or to the sources of the consultative examinations.  (T. 36.)  Neither Plaintiff nor counsel requested additional consultative examinations to be performed by her treatment providers or voiced any indication that there was an issue with the consultative examinations of record.  (*Id.*)  Plaintiff's objection fails to establish she has been harmfully deprived of adequate notice regarding her right to object or her right to request that a treating source perform such examinations.

For the reasons above, the Court finds substantial evidence supports the ALJ's decision to use an outside medical source for the consultative examination and Plaintiff's due process rights were not violated by the ALJ's decision to do so.  Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September 6, 2018
　　　　Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge